IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER DEAN ANDERSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

    Defendant.

No. CIV S-06-1692 DAD

ORDER

/

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment or remand, and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion for summary judgment is granted, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

On September 19, 2003, plaintiff applied for disability benefits under Title II of the Social Security Act (Act). (Transcript (Tr.) at 49-51.) Plaintiff alleged disability beginning September 11, 2001 due to injuries to his neck, back, and arm. (Tr. at 58.) Plaintiff's application

---

[1] Michael J. Astrue has been substituted for Jo Anne B. Barnhart as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

1

was denied initially on January 15, 2004, and upon reconsideration on April 9, 2004. (Tr. at 35-36.) Pursuant to plaintiff's request for hearing dated May 17, 2004, a hearing was held before an administrative law judge (ALJ) on March 21, 2005, at which time plaintiff represented himself and testified. (Tr. at 48, 255-87.)

In a decision issued on September 16, 2005, ALJ Theodore Slocum determined that plaintiff was not disabled at any time through that date. (Tr. at 18-29.) The ALJ listed the following findings at the conclusion of his decision:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2004.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease of the cervical and lumbar spine and left elbow cubital tunnel syndrome status post anterior submuscular transposition of the left ulnar nerve at the elbow are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: the claimant retains the residual functional capacity for no more than the full range of sedentary work except that he has manipulative limitations precluding power gripping in his left hand and no more than occasional power gripping in his right hand and postural limitations precluding climbing of ropes, ladders and scaffolds, and no more than occasional crawling, climbing of ramps/stairs, crouching, kneeling or stooping.

7. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

|   |   |
|---|---|
| 8. | The claimant is a "younger individual" (20 CFR § 404.1563). |
| 9. | The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564). |
| 10. | The claimant has transferable skills from skilled work previously performed as described in the body of the decision[2] (20 CFR § 404.1568). |
| 11. | The claimant has the residual functional capacity to perform substantially all of the full range of sedentary work[3] (20 CFR § 404.1567). |
| 12. | Based [on] Social Security Rulings 83-14 and 85-15, and the claimant's age, education, work experience and residual functional capacity as described above, the claimant is able to make a successful adjustment to work that exists in significant numbers in the national economy; a finding of "not disabled" is therefore reached within the framework of Medical-Vocational Rule 201.21.[4] Appendix 2, Subpart P, Regulations No. 4. |
| 13. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)). |

(Tr. at 28-29.)

Plaintiff obtained counsel and requested review of the ALJ's decision on November 16, 2005. (Tr. at 13-14.) The Appeals Council denied plaintiff's request for review on May 2, 2006. (Tr. at 4-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 1, 2006.

/////

---

[2] In the text of the decision, the ALJ states that plaintiff has "no transferable skills from skilled work previously performed," and there is no discussion of transferable skills. (Tr. at 27.) The court therefore infers that the word "no" should appear in finding No. 10 between the words "has" and "transferable."

[3] In the body of the decision, the ALJ found that plaintiff is able to perform "a significant range of sedentary work." (Tr. at 27.)

[4] In the body of the decision, the ALJ appears to have erroneously cited Rule 202.21, which applies where the claimant whose residual functional capacity is limited to light work.

# LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations. Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances two arguments in his motion for summary judgment. First, he asserts that the ALJ did not provide adequate reasons for rejecting the opinions of plaintiff's treating physicians Drs. Pyle and Ferraro, and did not specifically discuss Dr. Ferraro's functional capacity assessment. Second, plaintiff contends that the ALJ erred in failing to consult a vocational expert.

At step two of the sequential evaluation process, the ALJ determined that plaintiff suffers from (1) degenerative disc disease of the cervical and lumbar spine and (2) left elbow cubital tunnel syndrome post anterior submuscular transposition of the left ulnar nerve at the elbow. (Tr. at 28.) The ALJ determined at steps three and four that these medically determinable impairments do not meet or medically equal any listed impairment but that plaintiff is unable to perform any of his past relevant work, which included jobs as office manager, retail department store manager, and deputy sheriff. (Tr. at 26-28.) Plaintiff challenges the ALJ's determination at

step five that he has the residual functional capacity to perform substantially all of the full range of sedentary work and therefore is not disabled. Both of his arguments are addressed below.

**I. ALJ's Failure to Give Adequate Reasons for Rejecting Opinions of Treating Physicians**

It is well established that the weight to be given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). The ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different, independent clinical findings, the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751). The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of either a treating or examining professional. Lester, 81 F.3d at 831.

Here, plaintiff asserts that the ALJ rejected the opinions of Larry Pyle, M.D., the physician who treated plaintiff for his back problems, and Stephen Ferraro, M.D., plaintiff's treating physician with respect to his left elbow injury. In a letter dated February 18, 2004, Dr.

Pyle opined that plaintiff would be able to frequently lift and carry only 10 to 15 pounds due to weakness and ulnar neuropathy in the left arm. (Tr. at 173.) Dr. Pyle further opined that plaintiff would have extreme difficulty in standing, sitting, and walking for six hours in an eight hour work day due to bilateral sacroiliac pain that has been consistent over time, with spasms in the lumbosacral area and sciatic irritation dominantly on the right with motor weakness in the right leg. (Id.) Dr. Pyle estimated that plaintiff was able to sit or stand, on a noncontinuous basis, for approximately two hours out of an eight hour day. (Id.) Dr. Pyle also stated that plaintiff could not climb ladders, ropes, or scaffolding due both to his physical impairments and the pain medications prescribed for him in that regard. (Id.) With regard to grip strength, Dr. Pyle opined that plaintiff may occasionally be able to have a power grip in the right hand but would not be able to have a power grip in the left hand at all. (Tr. at 174.)

Earlier, during an examination on September 5, 2002, Dr. Ferraro found plaintiff "permanent and stationary" with regard to his left elbow. (Tr. at 110.) Dr. Ferraro opined that plaintiff had essentially lost the function of his left hand almost completely and was unable to use it for any gripping or grasping activities. (Tr. at 111.) Dr. Ferraro found that any use of the forearm musculature causes significant pain to plaintiff, at which point plaintiff is almost unable to move the arm at all. (Id.) Dr. Ferraro determined that plaintiff is limited to minimal use of his left upper extremity, with no repetitive activities, no gripping, no grasping, and no heavy lifting with the left arm, due to the ulnar nerve injury to his left elbow. (Tr. at 111-12.)

On December 16, 2003, plaintiff was examined by Charles Miller, M.D., a consultative examiner who conducted a complete orthopedic evaluation. (Tr. at 136-42.) With respect to plaintiff's functional capacity, Dr. Miller found plaintiff unrestricted in sitting, standing, and walking, only slightly restricted on handling with his left hand, and unrestricted in climbing, crawling, stooping, squatting, kneeling, and reaching. (Tr. at 142.) He found plaintiff capable of lifting and carrying 35 pounds frequently and 45 pounds occasionally, and capable of pushing and pulling 50 pounds frequently and 65 pounds occasionally. (Id.) Dr. Miller found

numbness in the ulnar nerve distribution of the upper left extremity and left arm atrophy, but no objective evidence of radiculopathy, although he noted symptoms of chronic neck and back pain and a history of abnormal MRI scans of the neck and back. (Tr. at 139, 141, 142.)

Plaintiff argues that, because Dr. Miller's opinion contradicted the opinions of the two treating physicians, the ALJ was required to state specific and legitimate reasons for rejecting the opinions of Drs. Pyle and Ferraro in favor of the opinion by the consultative examiner, Dr. Miller. In plaintiff's view, the ALJ did not weigh the opinion of Dr. Ferraro at all. The court finds that the record does not support plaintiff's contentions.

Contrary to Dr. Miller's opinion, the ALJ found that plaintiff's degenerative disc disease of the cervical and lumbar spine and his left elbow cubital tunnel syndrome status post anterior submuscular transposition of the left ulnar nerve at the elbow are impairments that "significantly limit the claimant's ability to lift, sit, stand, and walk." (Tr. at 20.) After considering the opinions of all three physicians, as well as plaintiff's own written statements and his testimony at the hearing, the ALJ determined – contrary to Dr. Miller's opinion and largely consistent with Dr. Pyle's opinions in April and October 2002 – that plaintiff retains the residual functional capacity to (1) lift only 20 pounds occasionally and 10 pounds frequently, (2) sit for six hours in an eight hour day, and (3) stand and/or walk for two hours in an eight hour day. (Tr. at 21.) The ALJ also determined, again contrary to Dr. Miller's opinion and largely consistent with Dr. Pyle's and Dr. Ferraro's opinions, that plaintiff would have postural limitations for only occasional bending, climbing, crawling, crouching, kneeling, and stooping, as well as manipulative limitations precluding power gripping with his left non-dominant hand. (Id.) The ALJ explained his conclusions in detail (tr. at 21-26), noting in particular that both of the treating physicians considered plaintiff a candidate for rehabilitation (see tr. at 111, 190) and taking into account plaintiff's testimony and written statements concerning his ability to sit and his medication habits (see tr. at 25, 230, 277-82).

/////

It is evident that the ALJ thoroughly considered the opinions of plaintiff's treating physicians. This is not a case in which the ALJ rejected the treating physicians' opinions outright in favor of the opinion of a consultative examiner. Rather, the ALJ's determination of plaintiff's residual functional capacity is based on an analysis that provides specific and legitimate reasons for adopting aspects of each physician's opinion, as supported by substantial evidence in the record. Lester, 81 F.3d at 830; Murray, 722 F.2d at 502. The ALJ was entitled to resolve the conflict between the treating physicians' opinions, on the one hand, and the examining physician's opinion, on the other. Plaintiff's arguments to the contrary are unpersuasive.

The court therefore finds that plaintiff is not entitled to summary judgment or remand based on his argument that the ALJ did not give adequate reasons for rejecting the opinions of his treating physicians, to the extent that they were rejected, and did not adequately discuss Dr. Ferraro's capacity assessment.

## II. The ALJ's Failure to Consult a Vocational Expert

"When a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . . In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities." Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988), and citing Jones, 760 F.2d at 998). See Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983); Tackett, 180 F.3d at 1103-04 (remanding with instructions to take the testimony of a vocational expert because the claimant's inability to sit for more than 30 minutes constituted a non-exertional limitation not contemplated by the grids). Having difficulty performing manipulative or postural functions of work are examples of non-exertional limitations. 20 C.F.R. § 416.969a(c)(vi). The Ninth Circuit has also recognized that pain may be a nonexertional limitation. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); see also 20 C.F.R. § 416.969a(c).

Here, the record reflects that plaintiff's nonexertional limitations include postural and manipulative limitations as well as pain. Plaintiff testified at the hearing that he suffers from headaches, dizziness, and neck pain related to his cervical symptoms. Regarding his lumbar symptoms, he testified that his legs "don't work anymore," which corresponds to motor weakness found by Dr. Pyle, that he has difficulty taking a shower, and that sometimes he cannot stand. (Tr. at 269-70.) He testified that he suffers numbness on the outside of his left elbow and pain on the inside. (Tr. at 271.) There are times he cannot get out of bed due to his back problems and pain. (Tr. at 277.) Although he has stopped taking some of the stronger pain medications prescribed for him due to their side effects, he continues to take Effexor and Soma for pain. (Tr. at 278.) He stated that he can stand for 10 to 15 minutes and then has to sit, that he does quite a bit of sitting and lying down, and that he estimates his walking is limited to a city block. (Tr. at 280.)

In his enumerated findings, the ALJ found that plaintiff has the residual functional capacity to perform substantially all of the full range of sedentary work, and on that basis he relied on Rule 201.21 as a framework for decisionmaking. (Tr. at 29.) In the body of his decision, however, the ALJ addressed "light" rather than "sedentary" work and cited Rule 202.21, a medical-vocational rule applicable to persons whose residual functional capacity limits them to light work. (Tr. at 27-28.) Moreover, in the body of the decision, the ALJ also expressly found that plaintiff has nonexertional limitations narrowing the range of work he is capable of performing. (Tr. at 27-29.) However, in the enumerated findings the ALJ implicitly finds that plaintiff's nonexertional limitations do not significantly affect his potential occupational base. (Id.)

The court finds that on this record the grid rules do not accurately and completely describe plaintiff's abilities and limitations because his capacity to work has been compromised by significant nonexertional limitations, including the postural and manipulative restrictions discussed in detail by the ALJ and also severe, chronic pain that arises from plaintiff's multiple

impairments and restrictions that may arise from his inability to use both of his hands and arms. Substantial evidence in the record demonstrates that plaintiff's nonexertional limitations may significantly diminish his ability to work. Although the ALJ acknowledged the existence of nonexertional limitations, the ALJ relied on the grids, which are insufficient to determine whether work exists that plaintiff is capable of performing, given his limitations. Vocational testimony was required, and plaintiff is entitled to summary judgment on his argument that the ALJ erroneously relied on the grids, rather than calling a vocational expert to testify, despite the presence of significant nonexertional limitations.

## CONCLUSION

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Here, the court finds that the record has not been adequately developed such that the court can find plaintiff disabled at this time. On remand, the ALJ must hold a further hearing and take the testimony of a vocational expert to determine whether plaintiff is capable of performing jobs that exist in substantial numbers in the national economy. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). The expert must be fully apprised of plaintiff's medical history and must be questioned in a manner that properly takes into account all of plaintiff's nonexertional limitations. See Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004); Tackett, 180 F.3d at 1103-04.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 25) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 28) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: March 18, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/anderson1692.order